[No. 15171. Department One. February 28, 1919.]

E. W. McCONNELL, *Appellant*, v. GORDON CONSTRUCTION COMPANY *et al., Respondents.*[1]

CONTRACTS (87) — CONSTRUCTION — SUBJECT-MATTER — PLANS FOR BUILDING—GUARANTY OF SUFFICIENCY. In an action to recover damages from the collapse of a building constructed for plaintiff by defendant, it is error to permit the defendant to introduce evidence of the inadequacy of the plans, where the defendant had contracted to furnish the plans and thereby vouched for their adequacy.

EVIDENCE (175)—PAROL TO VARY WRITING—AMBIGUITY. Defendant's contract to "furnish" the plans for a building to be constructed for plaintiff, is not so indefinite or ambiguous as to permit oral evidence to show that plaintiff was familiar with the plans and as a matter of fact furnished them and so would be responsible for their inadequacy.

CONTRACTS (164, 176)—DEFENSES—ISSUES AND VARIANCE. In an action to recover damages for the collapse of a building constructed for plaintiff by defendant, the defenses of inadequacy of the plans and that the building collapsed by reason of additional weight imposed by plaintiff's change of the plans, are of the same nature, and if only one of them was raised by affirmative defense, the defendant should not be heard to say that the other was raised and could be presented under the general denial, where the case had been at issue for months while plaintiff's evidence was being taken by deposition, and nothing in the pleadings or at the trial specially suggested any such defense until the opportunity to guard against it had virtually passed.

INTEREST (7)—DEMANDS NOT LIQUIDATED. In an action for damages from the collapse of a building interest is recoverable only from the date of the judgment.

Appeal from a judgment of the superior court for King county, Ronald, J., entered March 20, 1918, upon the verdict of a jury rendered in favor of the defendant, in an action for damages for breach of contract. Reversed.

[1]Reported in 178 Pac. 823.

*Hughes, McMicken, Ramsey & Rupp* and *John P. Garvin,* for appellant.

*Edwin H. Flick* and *Peters & Powell,* for respondents.

MACKINTOSH, J.—The respondent, Gordon Construction Company, at Seattle, on November 3, 1909, wrote to the appellant at Denver, Colorado, a letter offering to construct for him a building substantially a reproduction of one then situated at the Alaska-Yukon-Pacific Exposition, in Seattle. This letter contained the following:

"We will furnish drawings and specifications by Harry Weatherwax . . . and furnish all material and labor and construct for you the 'Monitor and Merrimac' building, as per Weatherwax's plans . . . We will build in a substantial and workmanlike manner the 'Monitor and Merrimac' building, which will be a substantial reproduction of the 'Monitor and Merrimac' building on the 'Pay Streak', A-Y.-P. Exposition, with some additions and changes, as follows: . . . "

The offer contained in this letter was accepted by the appellant, and the respondent construction company proceeded with the construction of the building, having furnished a bond guaranteeing the faithful performance of the contract with the respondent insurance company as surety. The construction company completed the building and turned the same over to the appellant. Ten days later the building suddenly collapsed. The appellant reconstructed the building, and instituted this action to recover the cost of such reconstruction, and the damages resulting from the collapse.

The appellant's complaint was based upon his allegation that the construction company had improperly

constructed the footings under the three columns supporting the two trusses which carried the principal weight of the structure; that, according to the plans and specifications, these footings should have had a bearing surface of twenty square feet; whereas, in fact, they were originally constructed with a bearing surface of only sixteen square feet and subsequently new concrete was added to make them of the required area, and the columns supporting the trusses were then placed directly over the union between the old and new concrete, which resulted in the breaking of the footings at the point of union. The construction company admitted the collapse of the building, and in a general denial denied the allegations of negligence; and, as an affirmative defense, alleged that the collapse was caused by the addition of two tons of weight upon the trusses by reason of changes of construction ordered by the appellant. This affirmative matter was denied in the reply.

The appellant's testimony was taken by depositions, and several months were consumed in preparing the case for trial, and during this time and while the appellant's testimony was being produced before the jury, the respondent construction company gave no intimation that any other issue than that especially raised by the pleadings was to be presented. The construction company, however, was allowed, when presenting its defense, to introduce evidence that the plans were inherently defective in that the trusses were insufficient, as designed, to carry the weight which, of necessity, they must bear. This testimony was introduced over the objection of the appellant that the construction company, having furnished the plans, was liable for any defects therein, and would be responsible for the collapse of the building if it were

occasioned by the inadequacy of such plans. Further objection was made to the introduction of this evidence upon the ground that it had not been affirmatively pleaded as a defense. The construction company was also allowed to introduce evidence showing an additional weight of seventeen tons to have been placed upon the trusses, this weight having been imposed by changes not contemplated by the plans but ordered during the construction of the work by the appellant. Objection was made to this testimony on the ground that the affirmative defense only claimed that an additional weight of two tons had been added. A verdict was returned against the appellant, and in favor of the respondent upon a counterclaim which had been interposed for extra work done.

The testimony introduced respecting the adequacy of the plans should have been excluded for two reasons; the first being that the contract between the parties having called for the furnishing of the plans by the respondent construction company, thereby that company vouched for the adequacy of the plans and cannot now raise any question thereto. Where either party to a building contract agrees to furnish, and does furnish, the plans for a building, he thereby guarantees their sufficiency for the purpose. *Huetter v. Warehouse & Realty Co.*, 81 Wash. 331, 142 Pac. 675, L. R. A. 1915C 671. The respondent offered the testimony upon the theory — which the trial court adopted—that the word "furnish," as used in the contract, was so indefinite or ambiguous as to allow the production of parol testimony to explain it, and under this ruling the respondent construction company was allowed to show that the appellant was familiar with the plans at the time the contract was entered into; and that, as a matter of fact, instead of the respond-

ent furnishing the plans, the appellant himself was furnishing them. The word used is an ordinary word of common use and has a well defined, easily understood meaning, and to allow parol testimony to explain it, would be to violate the fundamental rule in regard to the varying of the terms of a written contract. The court was in error in the admission of testimony in this respect and in submitting to the jury the question of the interpretation to be placed upon the contract in regard to the furnishing of the plans. The contract having stipulated for the plans to be furnished by the respondent construction company, it cannot now question the adequacy of such plans.

The second reason why this testimony was inadmissible is that assigned by the appellant in his objection to it. The case had been at issue under the pleadings as framed by the parties for many months, both parties had attended and taken depositions, and the trial had proceeded to the point where the respondents were about to introduce their testimony before the appellant was apprised of the fact that any defense other than that suggested in the affirmative defense was to be relied upon. If the defense of inadequacy of the plans had been otherwise admissible, it was of the same nature as the defense that the collapse of the building was occasioned by the additional weight imposed by reason of the appellant's changes of construction. If these were matters which could not properly be raised by general denial, then each of them should have been pleaded as an affirmative defense. If, however, they were both issues presentable under the general denial, as is claimed by the respondents, then the fact that one of them was specially plead, and the presentation of the other was neither specially made in the pleadings nor in any

way called to the attention of the opposing party
until the opportunity to guard against the defense
had virtually passed and this had resulted in so embar-
rassing the appellant in the trial of his case, then the
respondents, in good conscience, should not be permit-
ted to pursue such a course of conduct. Having entered,
in addition to the general denial, an affirmative de-
fense, the respondent upon the trial should not be
permitted to offer testimony as to any other defense;
for by its conduct it has elected to take one of those
matters which, under its own theory, was properly at
issue under the general denial, and has presented it
as an affirmative defense and has thereby misled the
appellant, who had a right to assume from the plead-
ings that the defense to be made to its cause of action
was the one stated affirmatively in the answer; and
not only from the pleadings but from the respond-
ent's conduct of the trial, it was presupposed that the
only defense was that the trusses without the addi-
tional weight claimed to have been imposed upon them
by appellant were adequate. Having qualified their
general denial by specially pleading this defense, the
respondents thereby tendered a specific issue, and
they will not now be heard to say that they relied
upon the general issue raised by the general denial.
To allow it to do otherwise would be to set a trap for
the unwary. Had the respondents desired to present
the defense of the additional weight of the trusses
and the inadequacy of the plans, had they both been
properly presentable, they should either have rested
upon the general denial; or, if they chose, plead them
both specially. The method which they did pursue
amounted to a contradiction of defenses and was in
the nature of a subterfuge which could not but sur-
prise and mislead the appellant. *Ball v. Beaumont,*
63 Neb. 215, 88 N. W. 173.

The appellant also complains that the respondent should not have been permitted to show that an additional weight of seventeen tons was imposed upon the trusses. In view of the fact that the case must be sent back for a retrial, this assignment of error does not become material, for the reason that the respondent may now amend its answer to conform to the proof and the appellant will have an opportunity in preparing his case anew to introduce such evidence as he may see fit to meet the issue as it is now presented.

The appellant has further objected to the verdict against him for the reason that there was no competent evidence of the value of the extra work for which the jury found him liable. This presents a question of fact, and from an examination of the record, we are satisfied the jury was in possession of sufficient facts to justify a return of the verdict.

The judgment as it stands carries interest from the date of the collapse of the building. This is erroneous, as interest should only be allowed from the date of the judgment. *Wright v. Tacoma,* 87 Wash. 334, 151 Pac. 837.

For the reasons stated, the judgment of the lower court will be reversed and the case remanded for a new trial.

CHADWICK, C. J., TOLMAN, MITCHELL, and MAIN, JJ., concur.