[No. 31625.    Department Two.    March 22, 1951.]

MARION K. KIESSLING, *Respondent*, v. NORTHWEST GREY-
HOUND LINES, INC., *Appellant.*[1]

[1]Reported in 229 P. (2d) 335.

*Ned Hall*, for appellant.

*Wilkinson & Langsdorf*, for respondent.

GRADY, J.—This action was brought by respondent to recover damages arising out of injuries sustained when a bus in which he was riding upset. The acts of negligence submitted to the jury by the trial court were: Driving the bus on a slippery pavement at a negligent rate of speed while approaching a curve, and with defective equipment. The jury returned a verdict in favor of respondent. Motions for judgment notwithstanding the verdict and in the alternative for a new trial were denied.

The assignments of error call for a review of the sufficiency of the evidence to take the case to the jury upon the questions whether appellant was negligent with respect to the speed at which the bus was being driven, and the condition of the tires with which it was equipped; the exclusion of expert testimony offered by appellant with respect to the condition of the tires and the rate of speed of the bus as causes of its skidding on the pavement; the exclusion of the tires as evidence; the giving of an instruction with reference to the condition tires must be in when used on vehicles driven upon public highways, and the duty to check such tires; the inclusion in the judgment of interest from the date of the rendition of the verdict to the date of entry of such judgment.

The material factual situation which the jury could have found existed was substantially as follows: The appellant was a common carrier of passengers. On September 14, 1948, respondent was a passenger on one of appellant's busses. The bus was about 28 feet in length and the motor was at the rear end. It was equipped with two tires on the front end and four on the rear. The rear tires were considerably worn, those on the outside being worn more than those on the inside. The highway pavement had a crushed rock base with an approximate four-inch surfacing composed of a mixture of oil and rock. Rain was falling and the surface of the highway had become wet and slippery. The highway had a long sweeping curve and a grade of five per cent. When the bus started down the grade it was traveling about thirty-two miles per hour. The rear end of the bus swerved to the left. The driver swung the steering wheel to his left and accelerated the speed in order to straighten the bus on the road. The rear end continued to swing to the left. The right front wheel dropped over the right shoulder of the road. The rear end of the bus continued in its swing until it completely turned around and was headed in the opposite direction. The bus upset, and when it came to rest was on its top and was at about a forty-five degree angle with the road. It had slid on its top for a con-

siderable distance. The upset occurred at about the foot of the grade.

■ At the close of respondent's case, appellant made a motion for a nonsuit. The motion was denied. Appellant submitted its evidence. In such a situation we do not review the ruling of the trial court on the motion for nonsuit, but direct our attention to the motion for judgment notwithstanding the verdict.

We have stated so many times how a motion for a judgment notwithstanding the verdict of a jury shall be regarded by the trial court and by this court that further repetition is not necessary.

■ Applying our rules to the record before us, we think it very clear that it was for the jury to determine whether the skidding and overturning of the bus in which respondent was riding, was the result of a failure of appellant to exercise that amount of care and caution required of a common carrier of passengers in the manner in which the bus was driven and also in equipping it with suitable tires. Witnesses testified with reference to the surface of the highway, and its grade and curvature; also the manner in which the bus was driven and its speed; the rainfall and resultant slippery condition of the highway; the skidding of the bus; that it turned completely around and finally upset and slid on its top along the road until it came to rest. The jury had the assistance of maps and photographs in interpreting the testimony of the witnesses. The situation was such that reasonable minds could well differ as to whether the proximate cause of the skidding and upset of the bus was negligence on the part of appellant, or whether such skidding and upset was a mere accident consistent with the existence of due care on its part.

We have considered the arguments of appellant that the skidding of the bus was not evidence of negligence in its operation, and respondent not having shown that the skidding was not caused by a greasy or slippery road, the cause of the upset of the bus was left to speculation; also that the action must fail because of the failure of respondent to

plead and prove that such negligence as there may have been was the proximate cause of his injuries. Appellant cites such cases as *Osborne v. Charbneau*, 148 Wash. 359, 268 Pac. 884, 64 A. L. R. 251; *Martin v. Bear*, 167 Wash. 327, 9 P. (2d) 365, and *Tutewiler v. Shannon*, 8 Wn. (2d) 23, 111 P. (2d) 215, as well as several others in support of a general rule that skidding in and of itself may not be evidence of negligence in the operation of the vehicle. In some of the cases it was pointed out that liability would be incurred if the skidding was due to any negligent act or omission on the part of the driver of the vehicle, and that situations might exist where the burden would be cast upon the driver to show that the ultimate result came about through no fault of his own. The explanation made by the driver of the bus was that as it emerged from the shelter of a cut and the timber at the top of a down-grade curve the wind caught the rear end of the bus and skidded it to the left-hand side of the road.

The jury had the right to take all of the direct and circumstantial evidence and draw reasonable inferences therefrom and reach the conclusion that the driver of the bus either did, or failed to do, some act in connection with his driving that started the bus to skid. We are not in accord with the argument made that the burden was upon respondent to produce evidence negativing the idea that there was any greasy or slippery place on the road which caused the skidding. It is only in exceptional instances that a plaintiff is required to plead or prove a negative, and this case is not one of them.

In seeking to meet and rebut the inference that the speed of the bus was a contributing factor to the upset, appellant called an expert witness to prove that, by the use of a certain mathematical formula, the maximum safe speed of the bus could have been sixty miles per hour, as well as the maximum safe speeds that could be travelled on curves; also the maximum safe speed for the bus to have travelled equipped with new tires as well as with worn tires. It is somewhat difficult to determine from the record upon what

ground the court rejected the proffered testimony. The objections made were quite general. In some instances they were upon the ground that no proper foundation had been laid; in others, that the question propounded (hypothetical) did not contain all the necessary elements, and in others that the subject of inquiry was not of the character requiring expert opinion. We gather, however, from one of the hypothetical questions propounded, and upon which the court made its final ruling, as well as from the brief and oral argument of counsel, that the admissibility of expert testimony is the problem presented. We have not been cited to any authority discussing or deciding the precise question, nor have we been able to find any in our research. In finding an answer, the difficulty lies not so much in determining what the rules are, but in their application to a given situation.

█ As a general rule, a witness must testify to facts, and not give his opinion when such facts are capable of being clearly detailed, so that the jury may form correct conclusions therefrom. But when the subject under inquiry is such that unexperienced persons are unlikely to be capable of forming a correct conclusion without the aid of expert advice, then the opinion of such expert may be received. *Pearson v. Alaska Pacific Steamship Co.*, 51 Wash. 560, 99 Pac. 753; *Johnson v. Caughren*, 55 Wash. 125, 104 Pac. 170; *Webb v. Seattle*, 22 Wn. (2d) 596, 157 P. (2d) 312, 158 A. L. R. 810; 3 Jones' Commentaries on Evidence (2d ed.), § 1213. Applying the rules pronounced in these authorities to the facts of this case, it becomes clear what would have been a safe speed for the bus to have travelled was something the jurors were fully capable of determining when the physical facts were portrayed to them.

Appellant sought to show that the worn condition of the rear tires on the bus was not a contributing factor to its skidding as was claimed by respondent. Experts on construction of rubber tires and their use were called to prove that the coefficients of friction of new tires having a tread design or grooves, and worn tires in the condition of those

on the bus on the occasion of the accident were approximately equal when being used on a wet macadam road. Upon objections being made, the court did not permit the witnesses to give expert opinions. It is not clear whether the court was of the opinion that the witnesses were not qualified, or whether the subject matter of the proof sought was not of a character calling for the knowledge of an expert. The latter aspect is the one presented in the briefs.

■ Applying the principles set forth in the authorities above cited, we are of the opinion that whether worn tires are more or less likely to skid on wet macadam road than new tires is a matter of such common experience that jurors would be able to form a conclusion without the aid of expert testimony.

■ Error is assigned in the refusal of the court to admit in evidence two of the rear tires that were on the bus. The court was of the opinion that the evidence showed substantial changes in the tires had taken place between the time of the accident and when offered in evidence. Whenever an object is offered in evidence, and its probative value as such depends upon its physical appearance, and the objection to its admission is based upon the claim that its condition and appearance has so materially changed that it does not portray the true situation, the trial court is necessarily vested with a wide latitude of discretion, and its ruling will not be disturbed unless there is a clear abuse thereof. *Allen v. Porter*, 19 Wn. (2d) 503, 143 P. (2d) 328; *Pilot Life Ins. Co. v. Wise*, 61 F. (2d) 481; 2 Jones on Evidence (4th ed.), Civil Cases, 752, § 399; 32 C. J. S. 457, Evidence, § 607.

Appellant urges that the court erred in giving the following instruction:

"You are instructed that the law of the State of Washington at the date of the accident in this case provides as follows: Every vehicle when operated upon the public highways of this state shall be equipped with tires in such condition as to not endanger or be likely to endanger persons or property. Tires shall be checked by visual examination."

Appellant argues that the instruction is not a correct statement of the law and was inapplicable to the tires on the bus in that the regulation upon which the instruction was based is aimed at tires likely to blow out because they are worn thin or the body cord is broken, neither of which appeared in this case; also that the "visual examination" referred to in the instruction is that to be made by a safety inspector and not a duty placed upon appellant. The wording of the instruction is taken from the vehicle safety inspection manual, which contains rules and regulations made pursuant to chapter 189 of the Laws of 1937 (Rem. Rev. Stat., Vol. 7A, § 6360-6 [P.P.C. § 288-1] *et seq.*). This act and its subsequent amendments provide for inspection of all kinds of motor vehicles, including busses, used upon public highways. Authority is given to provide inspection stations, to make rules and regulations, and owners of motor vehicles are required to have them inspected at periodic times. Rules and regulations have been promulgated and are published in a vehicle safety inspection manual.

It was the duty of appellant to equip its busses with tires reasonably safe for the uses made of them in the absence of any safety regulation promulgated pursuant to statute. This would apply not only to the strength of the tires, but also to their surface condition in so far as there might be a likelihood of skidding on wet pavement. We are not in accord with the argument of appellant directed against the instruction, except with reference to the last sentence thereof. This requirement was directed to the department as a guide to its inspectors and was not a directive to the appellant. It should not have been a part of the instruction, but we do not think its inclusion was in any way prejudicial. It merely states how tires shall be checked, and, even though the jurors may have believed this was a requirement directed to appellant, the burden of visual examination may be regarded as so slight as not to have prejudiced appellant in any way.

The verdict of the jury was returned May 13, 1950. Judgment on the verdict was entered July 7, 1950. The court

allowed interest on the amount of the verdict from its rendition to the entry of judgment. There is no statute in this state providing for the accrual of interest from the date of a verdict. Rem. Rev. Stat., § 457, provides for interest on judgments from the date of entry thereof. It is argued that inasmuch as a demand becomes liquidated when a verdict is returned, the rule that interest commences to run from that time should be applied; also, because the verdict when entered upon the execution docket as required by Rem. Rev. Stat., § 431-1, is in effect a lien upon real property, it must follow that interest commences to run from the date of the verdict. However, in the cases of *Rood v. Horton*, 132 Wash. 82, 231 Pac. 450 (verdict of jury), and *Phifer v. Burton*, 141 Wash. 186, 251 Pac. 127 (award by court), it was decided that interest ran from the date of the judgment only. The theory upon which the decisions were based was that the demands had not become liquidated until the verdict of the jury or award made by the court had become merged in the judgments thereafter entered.

▉ The verdict of a jury or a pronouncement by the court determines and fixes a definite amount of recovery, but the demand is not fully liquidated until the entry of judgment for the reason that the court may grant a new trial because the award is excessive or insufficient or may raise or lower the amount and afford the party adversely affected the option to accept the same or submit to a new trial of the case; or, in the case of an award by the court, the trial judge may change his mind and make a different award than included in the original pronouncement.

We think the principle involved has been settled by *Buob v. Feenaughty Machinery Co.*, 4 Wn. (2d) 276, 300, 103 P. (2d) 325. That case involved a claim for unliquidated damages. The court made an award of damages, but upon appeal the case was remanded for further consideration. On the second hearing the amount of damages was determined, but the court did not make any findings or conclusions. Subsequently, findings and conclusions were made and the judgment entered thereon, which was the third judgment

in the case. We held that interest commenced to run from the date of the last judgment because until that time the amount of damages had never become liquidated. This subject is discussed in the annotation in 1 A. L. R. (2d) 492. The author cites a number of cases holding that in the absence of a statute, interest runs from the date of entry of judgment and not from date of rendition of verdict. The author also points out that after several of the cases were so decided, the legislatures of the respective states enacted statutes providing for interest from the rendition of the verdict. We are of the opinion that the court erred in including in the judgment interest from the rendition of the verdict, but should have allowed interest only from date of judgment.

The judgment is affirmed in all respects, except as to the matter of interest, and the cause is remanded for a correction of the judgment accordingly. We do not consider the modification of the judgment obtained on the appeal sufficient to warrant denial of costs and disbursements in this court in favor of respondent.

SCHWELLENBACH, C. J., ROBINSON, MALLERY, and HAMLEY, JJ., concur.